# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEREMY SREBRO,** | : | No. 3:12cv2136 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **DUNBAR ARMORED, INC.,** | : | |
| Defendant | : | |

## MEMORANDUM

Before the court is Defendant Dunbar Armored, Inc.'s (hereinafter "defendant") motion to dismiss count I of Plaintiff Jeremy Srebro's (hereinafter "plaintiff") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 4). The matter is fully briefed and ripe for disposition. For the following reasons, the court will deny defendant's motion.

## Background

This case arises from plaintiff's time as an armored truck driver for defendant. Defendant is in the business of providing specialized security services, including armored transportation in its signature red and black armored trucks. (Doc. 3, Ex. A, Compl. (hereinafter "Compl.") ¶ 2). Plaintiff was employed as an armored truck driver based out of defendant's Olyphant, Pennsylvania location. (Id. ¶ 5). Some of the armored trucks plaintiff drove

required a Commercial Driver's License ("CDL") to lawfully operate.[1]  (Id. ¶ 10).  Defendant knew that plaintiff did not have a CDL, but nonetheless instructed him to drive trucks requiring a CDL.  (Id. ¶¶ 11, 31).

As a part of his duties as an armored truck driver, plaintiff inspected his truck prior to each shift for compliance with the Pennsylvania Motor Vehicle Code and/or Department of Transportation regulations.  (See id. ¶ 12).  During these inspections, plaintiff learned that some of defendant's vehicles were not legally inspected and/or registered as required under Pennsylvania law.  (Id. ¶ 13).  Plaintiff also learned that defendant's vehicles contained multiple defects that rendered them unsafe to operate, such as faulty brakes, bald tires, broken lights, broken tie rods, broken or missing windshield wipers, broken heat and/or air conditioning, oil leaks, and rusted door hinges.  (Id. ¶ 14).

Plaintiff promptly and continuously complained to his supervisors that many of the trucks were not legally inspected / registered and not otherwise safe to drive.  (Id. ¶ 16).  Given the condition of defendant's trucks, plaintiff

---

[1] Defendant disputes plaintiffs allegations that some of defendant's trucks required a CDL to be lawfully operated.  (See Doc. 12, Reply Br. at 2).  Defendant also disputes the validity of plaintiff's allegations regarding the inspection and/or registration status of the trucks.  (See id. at 4).  As the court will explain below, such factual contentions attached to a reply brief are not appropriate for consideration at this stage in the litigation.

felt compelled to inform the drivers of the next shift by affixing handwritten sticky notes to the steering wheel of the truck stating that "this vehicle is not safe to drive." (Id. ¶ 15). Despite plaintiff's actions, defendant failed and/or refused to address these issues and, instead, directed plaintiff to drive the trucks in their current, unsafe condition. (Id. ¶¶ 17, 30).

Instead of responding to plaintiff's complaints, defendant initiated a campaign of retaliation against plaintiff. (Id. ¶¶ 19, 32). Plaintiff was forced to work in vehicles with heavy smokers. (Id. ¶ 20). Plaintiff was also required to transport in excess of $1.7 million without the assistance of a second armed guard, even though defendant's policies required two armed guards on such assignments. (Id. ¶¶ 22-23). Defendant ignored plaintiff's complaints about these policy violations, and re-assigned him to the "Monroe County Run," which was considered the most dangerous route. (Id. ¶¶ 21, 24-25, 27).

Upon learning that plaintiff reported the above-mentioned issues to defendant's corporate headquarters, plaintiff's supervisors escalated their retaliatory conduct and cut plaintiff's hours. (Id. ¶ 28). Plaintiff felt that he was forced to resign from his employment with defendant on February 22, 2012. (Id. ¶ 33). Plaintiff believed his resignation was necessary because of defendant's retaliatory acts as well as its insistence that he operate unsafe, unregistered and/or uninspected trucks that require a CDL. (Id. ¶¶ 33, 35).

3

Plaintiff has suffered injuries as a result of the termination of his employment with defendant, including lost wages and benefits. (Id. ¶ 38).

On September 19, 2012, plaintiff initiated this action by filing a two-count complaint in the Court of Common Pleas of Lackawanna County. (See id.) Count I charges that defendant is liable for wrongful termination of his employment pursuant to the public policy exception to the at-will doctrine. (Id. ¶¶ 29-38). In count II, plaintiff alleges that defendant violated the Pennsylvania Wage Payment and Collection Law, 43 PA. CONS. STAT. ANN. § 260.1, *et seq*. Defendant was served with the complaint on September 26, 2012, and on October 25, 2012, defendant filed a timely notice of removal in this court pursuant to 28 U.S.C. § 1446(b). (Doc. 2, Notice of Removal ¶¶ 4-6). On November 1, 2012, defendant responded to the complaint with a motion to dismiss count I of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 4) The parties briefed this motion, bringing this case to its current posture.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Plaintiff Jeremy Srebro is domiciled in and a citizen of Pennsylvania. (Compl. ¶ 1). Defendant Dunbar Armored, Inc. is a Maryland corporation with a principal place of business in Maryland. (Id.) Because complete diversity of

citizenship exists among the parties and the amount in controversy exceeds $75,000.00, the court has jurisdiction over the case. See 28 U.S.C. § 1332. As a federal district court sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Standard of Review**

The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35. In evaluating the sufficiency of a

complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." McTernan v. N.Y.C., 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotation marks omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the

type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted). "Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (quoting Twombly, 550 U.S. at 555).

The Supreme Court has counseled that a court examining a motion to dismiss should, "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Next, the court should make a context-specific inquiry into the "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." Id. at 681.

**Discussion**

Defendant asserts that court I fails because the facts alleged in the complaint do not amount to a claim for wrongful termination. Plaintiff counters that the complaint adequately alleges a claim for wrongful termination under the criminal conduct public policy exception to the at-will doctrine. After careful consideration, the court agrees with plaintiff and finds that the complaint adequately states a claim for wrongful termination under Pennsylvania law.

Pennsylvania is an "at-will" employment state, as such, employers enjoy

an almost unfettered right to terminate a worker without cause. See Henry v. Pittsburgh & L.E.R. Co., 21 A. 157 (Pa. 1891) ("A railroad corporation, or an individual, may discharge an employe with or without cause at pleasure, unless restrained by some contract . . . ."); see also Weaver v. Harpster, 975 A.2d 555, 562 (Pa. 2009) ("In Pennsylvania, absent a statutory or contractual provision to the contrary, either party may terminate an employment relationship for any or no reason." (citing Geary v. U.S. Steel Corp., 319 A.2d 174, 176 (Pa. 1974))). There are two potential exceptions to the at-will employment doctrine under which an employee may seek damages for wrongful termination: first, when an employer terminates an employee with a special intent to harm, and second, when an employee's termination is contrary to public policy. See Goodwin v. Moyer, 549 F. Supp. 2d 621, 636 (M.D. Pa. 2006) (citing Ritter v. Pepsi Cola Operating Co. of Chesapeake & Indianapolis, 785 F. Supp. 61, 63-64 (M.D. Pa. 1992)).

The public policy exception to the at-will employment doctrine is a narrow one predicated on a finding of a clearly defined public policy mandate that concerns a citizen's social rights and responsibilities. See Field v. Phila. Elec. Co., 565 A.2d 1170, 1179 (Pa. Super. Ct. 1989); see also Geary, 319 A.2d at 180 (recognizing that an action for wrongful termination may be appropriate when the at-will employment relationship was terminated in clear

8

violation of a mandate of public policy); Hunger v. Grand Cent. Sanitation, 670 A.2d 173, 176 (Pa. Super. Ct. 1996) ("We have recognized a public policy exception only in extremely limited circumstances."). The Third Circuit Court of Appeals has found that "[t]he public policy exception has been most frequently applied under Pennsylvania law when the discharge is a result of the employee's compliance with or refusal to violate the law." Clark v. Modern Grp. Ltd., 9 F.3d 321, 328 (3d Cir. 1993) (quoting Smith v. Calgon Carbon Corp., 917 F.2d 1338, 1344 (3d Cir. 1990)).

When the "commit a crime" public policy exception is invoked, the plaintiff must point to his employer's course of action that is "clearly illegal."[2] See Kelly v. Ret. Pension Plan for Certain Home Office, 73 F. App'x 543, 544-45 (3d Cir. 2003). In other words, "Pennsylvania will not recognize a wrongful

---

[2] The court notes that claims reliant upon the "commit a crime" public policy exception to the at-will doctrine have succeeded when the plaintiff specifically identifies the law violated by the employer's actions. See, e.g, Woodson v. AMF Leisureland Ctrs., Inc., 842 F.2d 699, 702 (3d Cir. 1988) (ruling for the plaintiff when she refused to serve a visibly intoxicated person in violation of 47 PA. CONS. STAT. ANN. § 4-493); Perks v. Firestone Tire & Rubber Co., 611 F.2d 1363, 1365-66 (3d Cir. 1979) (finding that a cause of action for tortious discharge existed where the employee was discharged for refusing to take a polygraph as a condition of employment, as is prohibited by 18 PA. CONS. STAT. ANN. § 7321); Levito v. Hussman Food Serv. Co. Victory Refrigeration Div., 1990 WL 1426, at *2-3 (E.D. Pa. Jan. 8, 1990) (denying a motion to dismiss because the complaint alleged wrongful termination for refusing to engage in an illegal kick-back scheme in violation of 18 PA. CONS. STAT. ANN. § 4104).

discharge claim when an at-will employee's discharge is based on a disagreement with management about the legality of a proposed course of action unless the action the employer wants to take actually violates the law." Clark, 9 F.3d at 328.

In the instant case, plaintiff pled that he was directed by defendant to drive armored trucks that required a CDL to operate even though defendant knew that he did not possess such a license. (Compl. ¶¶ 10-11, 31). Driving a commercial vehicle that requires a CDL without such a license is a violation of Pennsylvania law.³ Moreover, plaintiff avers that he was instructed by defendant to drive trucks that were not safe, inspected or validly registered in Pennsylvania in violation of the law.⁴ (Id. ¶¶ 12-13, 17, 30). Plaintiff contends

---

³ Notwithstanding several well-defined exceptions, Pennsylvania law prohibits anyone from driving a commercial motor vehicle unless: "(1) the person has been issued a commercial driver's license; (2) the person's commercial driver's license is in his immediate possession; and (3) the person's commercial driver's license was issued for the class of commercial vehicle operated and contains all applicable license endorsements." 75 PA. CONS. STAT. ANN. § 1606(a). Moreover, under Pennsylvania law, vehicle owners are prescribed from authorizing an unlicensed person from operating their vehicles, 75 PA CONS. STAT. ANN. § 1574.

⁴ Unless otherwise provided by the Pennsylvania Motor Vehicle Code, vehicles in Pennsylvania must be registered in the Commonwealth and display valid inspection stickers. See 75 PA. CONS. STAT. ANN. § 1301(a) ("No person shall drive or move and no owner or motor carrier shall knowingly permit to be driven or moved upon any highway any vehicle which is not registered in this Commonwealth . . . ."); 75 PA. CONS. STAT. ANN. § 4703(a) ("[N]o motor vehicle required to bear current registration plates issued by this

that he complained to defendant when he was forced to commit these violations of Pennsylvania law, and, as a result, defendant retaliated against him and ultimately terminated him.  (Id. ¶¶ 16, 33, 35).

These averments sufficiently state a claim for wrongful termination pursuant to the "commit a crime" public policy exception to the at-will doctrine. Plaintiff specifically pled the illegal conduct that defendant instructed him to pursue as a part of his employment.  Plaintiff avers that he objected to such conduct and that his objections led to his discharge.  This case is not one in which the plaintiff incorrectly assumed that the objected to conduct violates the law–Pennsylvania law unequivocally requires certain vehicle drivers to possess CDLs and that vehicles be registered / inspected.  Plaintiff's allegations, if true, amount to an actual violation of the law.

Defendant presents three arguments in an attempt to establish that the complaint does not state a claim under the "commit a crime" public policy exception.  First, defendant argues that plaintiff did not adequately allege that he was forced to commit a crime.  Defendant analogizes this case to Clark v. Modern Group, Ltd., in which the terminated employee incorrectly assessed the legality of the conduct he was instructed to do by his employer.  9 F.3d at

Commonwealth . . . shall be driven . . . unless the vehicle displays a currently valid certificate of inspection issued under this chapter.").

11

325. The Third Circuit held that the plaintiff in Clark could not claim wrongful termination because he was not actually asked to violate the law. Id. at 332.

With respect to the instant case, defendant asserts that a CDL is only required if the commercial vehicle has a gross weight of 26,001 pounds,[5] and defendant maintains that none of the vehicles plaintiff was asked to operate had such a weight. Defendant attaches corporate reports and an affidavit by Douglas White, Dunbar's Vice-President, to establish these facts. (See Doc. 12, Reply Br. at 9). Defendant also relies upon White's affidavit and a vehicle inspection report to show that the vehicles at the Olyphant location were registered and that plaintiff cannot state that there was an actual violation of the law. (See id.)

Defendant's arguments are meritless with respect to whether plaintiff sufficiently pled an actual violation of the law. Court's deciding a motion to dismiss only consider the facts alleged in the complaint, the exhibits attached to the complaint, and matters of public record. See Oshiver, 38 F.3d at 1384-

---

[5] The Pennsylvania Motor Vehicle Code defines a "commercial motor vehicle" as (1) a vehicle that "has a gross weight of 26,001 or more pounds or such lesser rating as the department shall adopt under the provisions of section 6103(c) (relating to promulgation of rules and regulations by department), as determined by Federal regulation and published by the department as a notice in the Pennsylvania Bulletin;" (2) a vehicle that transports 16 or more passengers; (3) a school bus; or (4) a vehicle transporting hazardous material that is required to be placarded. 75 PA CONS. STAT. ANN. § 1603.

85. Thus, White's affidavit and the exhibits attached to defendant's reply brief will not be considered at this stage in the litigation. The court views plaintiff's well-pled allegations as true. This includes plaintiff's allegation that he was instructed to operate commercial vehicles without a CDL and his averments that defendant's vehicles lacked proper registration and/or inspection documentation. As such, defendant's first argument, that plaintiff fails to allege an actual violation of the law, fails.

In its second argument in favor of dismissal, defendant contends that plaintiff fails to demonstrate a causal nexus between his refusal to violate the law and his termination. Defendant asserts that plaintiff does not allege that he refused to operate vehicles in violation of the law, and that without such an allegation, plaintiff cannot establish that his termination was caused by his refusal to commit a crime. In support of this contention, defendant again relies upon corporate documents attached to its reply brief. (See Doc. 12, Reply Br. at 10).

As the court stated above, we will not consider affidavits and exhibits that are not attached to the complaint or a part of the public record at the motion to dismiss stage. Notwithstanding the exhibits plaintiff attached to the reply brief, the court rejects defendant's assertion that plaintiff must have refused to commit a crime, and have been terminated as a result, to state a

claim for wrongful discharge. Here, plaintiff avers that he continually complained about defendant's unlawful practices. (Compl. ¶¶ 16-17, 31). To show causation at the motion to dismiss stage in a wrongful termination action, the plaintiff need only to allege that he was discharged because he complained about having to break the law. See Quint v. Thar Process, Inc., No. 11-116, 2011 WL 4345925, at *13 (W.D. Pa. Sept. 15, 2011).

The facts plaintiff alleges in the instant complaint are similar to those alleged in Quint v. Thar Process, Inc. In Quint, the plaintiff was an engineer that worked with a supercritical pressure vessel used in the production of spices and other products. 2011 WL 4345925, at *1. After two days at a new job, plaintiff observed that the pressure vessel he used did not meet the requirements of the Pennsylvania Boiler and Unfired Pressure Vessel Law of 1998. Id. Specifically, the plaintiff noticed that the pressure vessel did not possess a valid code stamp. Id. Plaintiff continually raised his concerns regarding the legality of the pressure vessel, but his employer took no action. Id. at *1-2. Plaintiff used the pressure vessel under protest and he did not report the employer's conduct to state regulators because he feared that if he did so he would be terminated. Id. at *2. Ultimately, the employer terminated the plaintiff, and the district court founds that these facts sufficiently alleged a claim of wrongful termination. Id. at *2, 12-13.

14

Like the plaintiff in Quint, the plaintiff in the instant case was directed to violate the law, protested this direction and ultimately lost his employment. As was the case in Quint, plaintiff can establish causation by adequately pleading a relationship between his protest to management regarding the illegal conduct and the ultimate discharge. Thus, defendant's second argument also fails.

In its third argument, defendant asserts that plaintiff does not adequately allege that he was constructively discharged. The court finds that the allegations in the complaint adequately allege facts to support a finding that plaintiff was the subject of a constructive discharge. A constructive discharge exists when "the employer makes working conditions so intolerable that the employee is forced to resign." Pa. Labor Relations Bd. v. Sand's Rest. Corp., 240 A.2d 801, 803-04 (Pa. 1968). The standard for intolerability is one of reasonableness–whether a reasonable person in the employee's position would feel compelled to resign. Helpin v. Trs. of the Univ. of Pa., 969 A.2d 601, 614 (Pa. Super. Ct. 2009) (citing Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998)).

Here, plaintiff complained to defendant and defendant continued to direct plaintiff to operate vehicles without a proper license. Additionally, plaintiff was directed to operate vehicles with invalid registrations. Moreover,

defendant placed plaintiff on assignments with heavy smokers, relegated him to the most dangerous routes, and cut his hours.  If true, plaintiff's allegations would create an intollerable working environment.  A reasonable employee would not want to be continually subjected to second-hand smoke and assigned dangerous work for less money.  Accordingly, defendant's third argument lacks merit because plaintiff adequately stated facts to support his assertion that he was constructively discharged.

**Conclusion**

For the above-stated reasons, the court will deny defendant's motion to dismiss.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEREMY SREBRO,** | : | No. 3:12cv2136 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **DUNBAR ARMORED, INC.,** | : | |
| Defendant | : | |

## **ORDER**

**AND NOW**, to wit, this 6th day of August 2013, Defendant Dunbar Armored, Inc.'s motion to dismiss (Doc. 4) is hereby **DENIED**.

**BY THE COURT:**


**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**